# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAFTY PRODUCTIONS, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FUQING SANXING CRAFTS CO. LTD., *et al.*, <br><br> Defendants. | Case No. 15-cv-719-BAS(JLB) <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** <br><br> **[ECF No. 90]** |

Plaintiffs Crafty Productions, Inc. ("CPI") and Crafty Productions, LLC ("CPL") commenced this action against numerous defendants arising from allegations of copyright infringement of CPI's original craft designs and products. CPI and CPL (collectively, "Crafty") amended its complaint once with the operative complaint being the First Amended Complaint ("FAC"). Defendants The Michaels Companies, Inc. and Michaels Stores, Inc. (collectively, "Michaels"), and Hobby Lobby Stores, Inc. ("Hobby Lobby") now jointly move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e). Plaintiffs oppose.

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Defendants' motion to dismiss.

## I. BACKGROUND

CPI claims to be "a creative leader and trend-setter in the crafts industry, and has created many original product concepts and designs, including many creative, decorative wood products."[1] (FAC ¶ 22.) Its annual U.S. sales in 2009 topped $7 million, but by 2014, its annual U.S. sales had fallen to "barely $2 million, with much smaller profit margins because of the price competition resulting from intellectual property infringement and 'factory direct' sales from China." (*Id.* ¶ 23.)

Sometime in 1995, CPI hired Ms. Faherty as a sales representative. (FAC ¶ 24.) After providing samples of CPI's products for a manufacturing cost estimate, CPI began using a Chinese manufacturer owned by Kevin Xiao and/or Mr. Zhu for cost-saving purposes. (*Id.*)

Between 2002 and 2012, CPI sent Ms. Faherty "almost all of its products and designs (approximately 10,000 or more) to have samples made and priced by manufacturers in Asia." (FAC ¶ 25.) Plaintiffs allege that CPI later learned Ms. Faherty was "acting as a 'middle man' between CPI and factories owned (at least partially) by Zhu[.]" (*Id.*) But in 2012, Mr. Zhu allegedly informed CPI that Ms. Faherty "no longer worked with him and had left his organization and started another company." (*Id.*)

CPI later became aware of unauthorized infringing replicas of its product line produced by Zhejiang Hongye Art & Craft Co., Ltd. ("Hongye") in China being shipped to Michaels and Plaid. (FAC ¶¶ 26-27.) According to Plaintiffs, "[m]any of the products were exact or substantially similar replicas of CPI's original designs and products," but it "had never heard of Hongye, and it was not one of CPI's past or then-current manufacturers." (*Id.*)

In 2010, Ms. Faherty later arranged a visit to the Hongye factory and Mr. Zhu's Fuzhou factory in China. (FAC ¶¶ 28-29.) CPI was only permitted to see Hongye's

---

[1] CPI's founder, owner, and president is Paula Mello; CPI is a majority owner of CPL. (FAC ¶ 4.)

showroom rather than any manufacturing activity, where "there was an entire layout of many of CPI's original designs and products" with no apparent "effort by the manufacturer to disguise the fact that they were producing unauthorized CPI products." (*Id.*) In contrast, CPI toured the Fuzhou factory, and though the showroom had CPI products as well, "[t]he Hongye factory showroom . . . had significantly more of CPI's products in their factory[.]" (*Id.* ¶ 29.) While at the Fuzhou factory, CPI also noticed a "frame that was substantially similar to one of CPI's designs" with "Plaid" branding; Plaid allegedly supplies products to Walmart, Hobby Lobby, Michaels, and others. (*Id.* ¶ 30.) After noting the Plaid reference, Ms. Faherty allegedly stated, "In the past we have worked with some of your competitors, but we are in partnership with you and we will produce only for you." (*Id.*) Plaintiffs speculate that "Faherty and Zhu had cleared out all of CPI's products being manufactured for competitors for purposes of the visit, but accidentally left one frame behind." (*Id.*)

Plaintiffs allege that "for many years, Faherty and Zhu have been enabling the manufacture in China of products that are 'knock offs' or substantially similar to CPI's original designs and products, for sale to Plaid and others for ultimate retail sale in the United States and elsewhere." (FAC ¶ 33.) Around May 2012, CPI reminded Ms. Faherty "that she was not authorized to manufacture or sell any original CPI designs or products to anyone but CPI or its customers." (*Id.* ¶ 35.) "In response, Faherty stated that as long as she and Zhu were partners, they would not sell to CPI's competitors." (*Id.*) Plaintiffs allege that Ms. Faherty, Mr. Zhu, and Mr. Xiao also "signed a non-disclosure agreement concerning CPI's proprietary and/or confidential information." (*Id.*)

Despite its inquiries and investigation, Plaintiffs allege that infringement of its intellectual property continued. (FAC ¶¶ 36-37, 44-65.) The perceived negative impact of the infringement on CPI's business prompted it to pursue potential buyers of the company in China, starting with Mr. Zhu. (*Id.* ¶ 37.)

In October 2012, CPI, Ms. Faherty, Mr. Zhu, and Mr. Xiao entered into preliminary negotiations for the sale of CPI. (FAC ¶ 38.) Mr. Zhu eventually made a written offer to purchase CPI for $2 million, but he ultimately backed out of his offer. (*Id.* ¶ 39.)

By early 2014, CPI reached a series of agreements with Mr. Zhu, including a February 11, 2014 Contribution Agreement whereby Mr. Zhu's company, Fuqing Sanxing Crafts Co. Ltd. ("Fuqing"), "agreed to purchase a 33% ownership interest in CPL." (FAC ¶ 40.) Plaintiffs allege that Fuqing agreed to: (1) contribute $100,000 to CPL before December 1, 2014; and (2) "provide a quarterly sales report to CPL, listing all sales of products sold under the non-exclusive license[.]" (*Id.*) Plaintiffs also allege that under the Consulting Agreement, Fuqing was required to pay "a consulting fee of $100,000.00 . . . commencing on March 1, 2015, and on the 1st day of each year thereafter." (*Id.*) However, according to Plaintiffs, none of these obligations have been met. (*See id.*)

Later that same year, on November 6, 2014, Ms. Faherty met with Ms. Mello to allegedly express that "she thought Mello thought she did things that she never did, such as the Hongye factory." (FAC ¶ 42.) In response, Plaintiffs allege that Ms. Mello reminded Ms. Faherty that

> (a) competitors had tons of products that were "knock offs" or substantially similar to CPI's original designs and products, (b) Faherty had access to all of CPI's artwork to take to China as a "middle man" to have samples made, (c) CPI had paid close to $18,000,000.00 to factories that Faherty was associated with over the years.

(*Id.*) Plaintiffs opine that "[t]he only way the Hongye factory could have gotten CPI's products was if a retail buyer or Faherty or someone else brought CPI's designs to the Hongye factory." (FAC ¶ 43.) It suspects that buyers and Ms. Faherty had provided the designs because (1) Ms. Faherty allegedly "stated previously that buyers often give samples to the factories, and/or factory representatives come to the U.S. to buy products and bring them back to China; and (2) "[t]here were CPI items in the

actual

Hongye factory . . . that were never sold and had only been given to Faherty and buyers, which means those products could only have reached China via Faherty or one of the retail buyers in the U.S." (*Id.*)

On April 1, 2015, Plaintiffs commenced this action against Fuqing, Mr. Zhu, Ms. Faherty, MRF Associates, Inc., and numerous retailers, including Michaels and Hobby Lobby. Plaintiffs amended the complaint once as a matter of course with the operative complaint being the FAC. In the FAC, Plaintiffs assert eights claims for: (1) Copyright Infringement; (2) False Designation of Origin; (3) False Designation of Origin—California law; (4) Intentional Interference with Prospective Economic Advantage; (5) Unfair Competition under California Business & Professions Code § 17200; (6) Breach of Contract against Fuqing; (7) Breach of Contract against Mr. Zhu and Ms. Faherty; and (8) Fraud against Fuqing, Mr. Zhu, MRF Associates, and Ms. Faherty.

Defendants now jointly move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e). Plaintiffs oppose.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alteration in original). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statutes on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

As a general rule, a court freely grants leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## III. DISCUSSION

Defendants challenge not only the sufficiency of each claim asserted under Rule 12(b)(6), but also the entire complaint as being a "shotgun pleading." Throughout their motion, Defendants contend that the lengthy complaint fails to adequately provide fair notice of the claims asserted against them, emphasizing the volume of factual allegations that lack specificity.

Setting aside the "shotgun pleading" argument, the Court addresses each claim asserted against Defendants below.

### A. Copyright Infringement

Under the Copyright Act, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). In other words, "[a] federal copyright claim must include a showing of preregistration or registration of the copyright." *J & J Sports Prods., Inc. v. Kigo*, No. C 10-05512 SI, 2011 WL 3418394, at *1 (N.D. Cal. Aug. 4, 2011). "The Ninth Circuit effectively treats the § 411 registration requirement as an element of a copyright infringement claim." *Id.* (citing *Cosmetic Ideas, Inc. v. IAC/Interactive Corp.*, 606 F.3d 612, 618 (9th Cir. 2010).

"Registration" is defined as "a registration of a claim in the original or the renewed and extended term of copyright." 17 U.S.C. § 101. "[T]he owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit . . . together with the application and fee[.]" *Id.* § 408(a). The Ninth Circuit has interpreted this to mean that "receipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a)," explaining that this interpretation "ensures the broad copyright protection that the 1976 [Copyright] Act provided[,]" and "fully accomplishes the central purpose of registration." *Cosmetic Ideas*, 606 F.3d at 621.

That said, "an assignee who holds an accrued claim for copyright infringement, but who has no legal or beneficial interest in the copyright itself" cannot institute an action for infringement. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 883 (9th Cir. 2005). "To be entitled to sue for copyright infringement, the plaintiff must be the 'legal or beneficial owner of an exclusive right under a copyright[,]" where Section 2016, in turn, defines "exclusive right." *Id.*; *see also* 17 U.S.C. §§ 106 (enumerating six "exclusive rights"), 501(b) (establishing who is legally authorized to sue for copyright infringement). But "[t]he right to sue for an accrued claim for infringement is not an exclusive right under § 106." *Silvers*, 402 F.3d at 884. "Exclusive rights in a copyright may be transferred and owned separately, but § 201(d) creates no exclusive rights other than those listed in § 106, nor does it create an exception to § 501(b)." *Id.* at 885.

Here, Defendants argue that the owner of the copyrights—CPL—did not file for or obtain registration of the alleged works. By operation of the Contribution Agreement (FAC Ex. N), executed on or about March 1, 2014 between CPL, CPI, and Fuqing, CPI contributed "[a]ll assets and liabilities" to CPL, but the contribution was subject to the provision that CPI "will reserve and maintain all of its rights to pursue IP infringement claims against third parties and such rights will not be transferred or contributed to [CPI]." (Contribution Agreement § 1.2, Ex. A.) Consequently, the Contribution Agreement indicates that CPL is indeed the owner of the exclusive copyrights at issue. And neither the allegations in the FAC nor any evidence submitted suggests that CPL registered any copyrights at issue in this action.

At least one allegation in the FAC conflicts with the Contribution Agreement's ownership arrangement. Plaintiffs allege that "CPI [and not CPL] owns all of the copyrights, trademark rights and other intellectual property rights asserted herein, and has registered and/or applied to register all such rights permitting registration." (FAC ¶ 5.) Though courts generally are obligated to accept as true all well pleaded

facts alleged in the complaint in deciding a Rule 12(b)(6) motion, the Court may deviate from that principle when the allegations contradict documents attached to the complaint or incorporated by reference. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Because the Contribution Agreement was attached to the FAC and there is no dispute regarding its authenticity, the Court incorporates the Contribution Agreement by reference. Thus, the Court does not accept the allegation that CPI is the owner of the copyrights at issue because that understanding conflicts with the unambiguous language in the Contribution Agreement indicating that CPL is the owner of the copyrights.

Finally, Plaintiffs argue that "obviously the asserted infringing acts by Defendants occurring before March 1, 2014 remain outside any of the agreements, particularly the un-asserted Operating Agreement mentioning possible arbitration." (Pls.' Opp'n 5:19-21; *see also* FAC Ex. U.) Foremost, Plaintiffs present this argument in one sentence without any supporting legal authority. More importantly, the significance of the March 1, 2014 execution date is overstated. Section 501(b) states that "[t]he legal or beneficial owner of an exclusive right under copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). In other words, only the current owner of the copyright may commence an action for copyright infringement. *See id.* On April 1, 2015, the date when this action began, CPL was the owner of the copyrights at issue, and as such, CPL is the party required to complete the necessary procedures for bringing suit. *See* 17 U.S.C. §§ 205(a), 501(b); *Silvers*, 402 F.3d at 885 ("[W]hen a copyright interest is transferred it must be recorded to protect copyright holder's right to bring an infringement suit."); *see also* H.R. Rep. No. 94-1476, at 129 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5744 ("The provisions of subsection (d)[] requir[e] recordation of transfers as a prerequisite to the institution of an infringement suit[.]").

Because Plaintiffs fail to demonstrate that the owner of the copyrights at issue—CPL—registered the copyrights with the Copyright Office before initiating this infringement action, the claim for copyright infringement is barred. *See* 17 U.S.C. §§ 205(a), 501(b); *Silvers*, 402 F.3d at 884-85.

### B.     Trade Dress Infringement[2]

"Trade dress refers generally to the total image, design, and appearance of a product and 'may include features such as size, shape, color, color combinations, texture or graphics.'" *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)). To sustain a claim for trade dress infringement, a plaintiff must prove: (1) that its claimed dress is non-functional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion. *Id.* (citing *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987)).

Plaintiffs allege that "[b]ecause of the popularity and success of Plaintiffs' designs and products, the non-functional aspects of Plaintiffs' original designs and products has [sic] become distinctive; that is, the appearance including 'look and feel' of Plaintiffs' original designs indicates to consumers that the source and origin of these products is Plaintiffs, not competitors or others." (FAC ¶ 72.) Also attached to

---

[2] Plaintiffs' second and third claims are titled "False Designation of Origin," but they treat the claim as one for trade-dress infringement. (*See, e.g.*, FAC 18 n.4.) The two claims are distinct, requiring plaintiffs to prove different elements. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001) (enumerating three elements needed to prove trade-dress infringement); *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 928 (C.D. Cal. 1996) (enumerating five elements needed to prove claim for false designation of origin). Because the parties proceed with the understanding that the claim asserted is for trade-dress infringement, this Court will do the same.

the FAC are exhibits that include photographic comparisons of what Plaintiffs contend show trade-dress infringement. (FAC ¶ 73.) Plaintiffs also allege that all of the defendants' conduct occurred in interstate commerce, caused damages, and was committed willfully and maliciously. (FAC ¶¶ 74-78.) But none of these allegations provide facts sufficient to sustain a claim for trade-dress infringement. Rather, they are all conclusory allegations consisting of formulaic recitations of the elements that hold little weight in determining the sufficiency of the claim under Rule 12(b)(6). *See Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Plaintiffs' claim titled "False Designation of Origin—California Law" is even more devoid of specific facts, but more importantly, it runs afoul of Rule 8(a)'s requirement that plaintiffs plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Twombly*, 550 U.S. at 555. Under the title "False Designation of Origin," Plaintiffs assert that "each Defendant has violated Plaintiffs' rights under California law, including under Cal. Bus. & Prof. Code § 14200 *et seq.* (California's Model State Trademark Law), § 17500, and under the common law protections against trade dress infringement, dilution and palming off. (FAC ¶ 80.) With little to no facts, Plaintiffs present potential claims for false designation, trademark infringement, false advertising, trade-dress infringement, dilution, and palming off. (*See id.*) Consequently, in addition to the inadequacy of the factual allegations, the confusion surrounding the hodgepodge claim Plaintiffs have titled "False Designation of Origin—California Law" also fails to give Defendants fair notice of what the claim exactly is. *See Twombly*, 550 U.S. at 555.

As a result of the scant factual allegations and the uncertainty of the claims asserted, both of Plaintiffs' federal and California false-designation / trade-dress-infringement claims are insufficiently pled under Rule 12(b)(6). *See* Fed. R. Civ. P.

8(a) & 12(b)(6); *Twombly*, 550 U.S. at 555.

### C.     Intentional Interference with Prospective Business Advantage

Under California law, the elements for intentional interference with prospective business advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (Cal. 2003). "[T]o satisfy the intent requirement of this tort, it is sufficient to plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action." *Id.*

Once again, Plaintiffs assert conclusory allegations consisting of formulaic recitations of the elements that hold little weight in determining the sufficiency of the claim under Rule 12(b)(6). *See Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Plaintiffs fail to provide any specific facts that satisfy the elements of an intentional-interference claim. For example, Plaintiffs fail to identify a specific relationship with some third party, let alone Defendants' knowledge of the relationship. Similarly, there are defects with respect to each element. *See Korea Supply*, 29 Cal. 4th at 1153.

Plaintiffs' intentional-interference claim in its current form also fails to provide Defendants fair notice of the grounds upon which the claim rests. *See Twombly*, 550 U.S. at 555. With respect to Michaels and Hobby Lobby specifically, it is unclear what conduct on their part serves as the basis for this claim. *See id.* The allegation that Plaintiffs emphasize—that "each Defendant has sourced infringing products by 'going factory direct'"—does little to provide fair notice to Defendants

regarding any suspected wrongful interference. (*See* Pls.' Opp'n 6:20-7:13 (citing FAC ¶ 86).)

Accordingly, the absence of essential facts necessary to sustain the intentional-interference claim leads this Court to conclude that the claim is inadequately pled. *See* Fed. R. Civ. P. 8(a) & 12(b)(b).

### D. Unfair Competition

California's unfair competition law prohibits and provides civil remedies for unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (quoting Cal. Bus. & Prof. Code § 17200). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500 (false or misleading advertisements)." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

Aside from the paragraph incorporating by reference all allegations in the FAC, Plaintiffs assert in three paragraphs comprised of conclusory allegations that "each Defendant has employed unlawful and unfair business practices" injuring Plaintiffs. (*See* FAC ¶¶ 90-92.) Even scouring the over forty paragraphs of general allegations, it is unclear what conduct on the part of Michaels and Hobby Lobby amounted to unfair competition. Thus, as currently pled, Plaintiffs fail to assert a plausible claim for relief for unfair competition. *See Iqbal*, 556 U.S. at 678.

### IV. CONCLUSION & ORDER

Reviewing the FAC, it is evident that the primary defendants in this action are Fuqing Sanxing Crafts Co. Ltd., Tony Zhu, and Michelle Faherty. There are very few facts alleged related to the retailers' purported wrongful conduct, including Michaels and Hobby Lobby. Therefore, in light of the foregoing, the Court **GRANTS**

Defendants' motion to dismiss, and **DISMISSES WITH LEAVE TO AMEND** all claims asserted against Michaels and Hobby Lobby. (ECF No. 90.)

The scope of leave to file an amended complaint is limited to amending only the claims asserted in order to allege additional facts to cure the defects identified in this order. Plaintiffs may not plead additional claims, add additional parties, or add allegations that are not intended to cure the specific defects the Court has noted. Should any amended complaint exceed the scope of leave to amend granted by this order, the Court will strike the offending portions under Rule 12(f). *See* Fed. R. Civ. P. 12(f) ("The court may [act on its own to] strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."); *see also Barker v. Avila*, No. 2:09-cv-00001-GEB-JFM, 2010 WL 3171067, at *1-2 (E.D. Cal. Aug. 11, 2010) (striking an amendment to federal-law claim where the court had granted leave to amend only state-law claims).

If Plaintiffs choose to file an amended complaint, they must do so no later than **21 days** after the issuance of this order. If Plaintiffs indeed choose to amend their complaint, in doing so, they should keep in mind that "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. In other words, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Any amendment must also include a version of the amended complaint that shows—through redlining, underlining, strikeouts, or other similarly effective typographical methods—how it differs from the operative FAC. *See* Civ. L.R. 15.1(b)(2).

**IT IS SO ORDERED.**

**DATED:  September 29, 2016**

Hon. Cynthia Bashant
United States District Judge