1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRAFTY PRODUCTIONS, INC., *et al.*,<br><br>                                Plaintiffs,<br><br>      v.<br><br>FUQING SANXING CRAFTS CO. LTD., *et al.*,<br><br>                                Defendants. | Case No. 15-cv-719-BAS(JLB)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT FUQING SANXING CRAFTS CO. LTD.'S MOTION TO COMPEL ARBITRATION (ECF No. 84);**<br><br>**(2) TERMINATING DEFENDANT FUQING SANXING CRAFTS CO. LTD.'S MOTION TO DISMISS AND MOTION TO DISQUALIFY (ECF No. 89);**<br><br>**(3) STAYING ACTION PURSUANT TO 9 U.S.C. § 3; AND**<br><br>**(4) ADMINISTRATIVELY CLOSING ACTION** |

Plaintiff Crafty Productions, Inc. ("CPI") and Defendant Fuqing Sanxing Crafts Co. Ltd. ("Fuqing") collaborated to form and organize a limited liability company—Plaintiff Crafty Productions, LLC ("Company"). Now, after the business relationship between the parties deteriorated, the Company and its majority interest

member, CPI, are suing the Company's minority interest member, Fuqing, for a variety of contract and tort claims. (First Am. Compl., ECF No. 72.) However, the Operating Agreement entered into by the Company's members contains a broad arbitration clause. This clause not only provides for mandatory arbitration of disputes concerning the Operating Agreement or the parties' rights thereunder, but it also provides that the arbitrator will decide whether the dispute is subject to arbitration. Accordingly, Fuqing now moves for an order compelling the Company and CPI to arbitrate their claims against Fuqing. (ECF No. 84.) They oppose. (ECF No. 126.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Fuqing's motion to compel arbitration.

## I.   <u>BACKGROUND</u>

CPI is a California corporation based in Encinitas, California, that claims to be "a creative leader and trend-setter in the crafts industry, and has created many original product concepts and designs, including many creative, decorative wood products." (First Am. Compl. ¶¶ 4, 22.) Fuqing is a Chinese company based in Fuqing City, Fujiang Province, China. (*Id.* ¶ 6.)

In early 2014, CPI and Fuqing "agreed to work together." (Zhu Decl. ¶ 2, ECF No. 84-11.) The parties intended for Fuqing to manufacture CPI's craft products for sale in the United States market. (*Id.*) As a result, on or about March 1, 2014, the parties entered into an operating agreement that governed the creation and operation of a new company—Crafty Productions, LLC ("Operating Agreement"). (*Id.* ¶ 3; *see also* Operating Agreement, Mot. Ex. 9, ECF No. 84-12.) The Operating Agreement, which is also attached to the Company and CPI's complaint against Fuqing, provides that the "Company will engage in the business of designing, manufacturing, and selling of crafty products to retail clients, and to engage in such other business activities as may be related or incidental thereto." (Operating Agreement § 1.2.)

Further, Article 14 of the agreement provides:

> Arbitration constitutes the sole and exclusive remedy for the settlement of any dispute or controversy concerning this Agreement or the rights of the parties under this Agreement, including whether the dispute or controversy is arbitrable. The arbitration proceeding will be conducted in San Diego, California, before a single arbitrator under the Commercial Arbitration Rules of the American Arbitration Association in effect at the time a demand for arbitration is made. To the extent that there is any conflict between the rules of the American Arbitration Association and this arbitration clause, this clause will govern and determine the rights of the parties. The decision of the arbitrator, including the determination of the amount of any damages suffered, will be exclusive, final, and binding on all parties, their heirs, executors, administrators, successors, and assigns, as applicable, and judgment thereon may be entered in any court of competent jurisdiction. The costs of arbitration, including administrative fees, fees for a record and transcript, and the arbitrator's fees, as well as reasonable attorney's fees will be awarded to the party determined by the arbitrator to be the prevailing party.

(*Id.* art. 14.)

Sometime after the Company was formed, the business relationship between the parties deteriorated. (*See* Zhu Decl. ¶¶ 6–9.) Then, on April 1, 2015, the Company and CPI commenced this action against Fuqing and numerous other defendants, alleging, among other things, copyright infringement of CPI's original craft designs and products. (ECF No. 1.) In their First Amended Complaint filed on September 11, 2015, they allege seven claims against Fuqing, including breach of contract and copyright infringement. (First Am. Compl. ¶¶ 66–99, 105–11.) Fuqing moves to compel arbitration of all of these claims under the Federal Arbitration Act. (ECF No. 84.) Further, it requests an immediate stay of this action pending completion of the arbitration. (*Id.*)

//

//

//

– 3 –

## II.    **ANALYSIS**

The Company and CPI oppose Fuqing's motion by principally arguing that their claims are not encompassed by the Operating Agreement's arbitration provision. (*See* Opp'n 4:5–7:3.) In other words, they argue their claims against Fuqing are not arbitrable. In many instances, the Court would determine the arbitrability of these claims. *See, e.g.*, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). However, for the following reasons, the Court concludes the parties have clearly and unmistakably agreed to delegate this issue to the arbitrator.

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act reflects a "national policy favoring arbitration," *Preston v. Ferrer*, 552 U.S. 346, 349, (2008), and emphasizes that valid arbitration agreements must be "rigorously enforced" according to their terms, *American Express Co. v. Italian Colors Restaurant*, 570 U.S. ---, 133 S. Ct. 2304, 2309 (2013). *See also AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The 'principal purpose' of the FAA is to 'ensure[e] that private arbitration agreements are enforced according to their terms.'"). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Although federal policy favors arbitration agreements, the Supreme Court "has made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). "Accordingly, the question of arbitrability is left to the court unless the parties clearly

1   and unmistakably provide otherwise." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir.

2   2011); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir.

3   2013). "Clear and unmistakable evidence of an agreement to arbitrate arbitrability

4   'might include . . . a course of conduct demonstrating assent . . . or . . . **an express**

5   **agreement to do so**.'" *Mohamed v. Uber Techs., Inc.*, --- F.3d ---, 2016 WL 4651409,

6   at *4 (9th Cir. 2016) (emphasis added) (quoting *Momot*, 652 F.3d at 988). If the

7   parties unmistakably agree to arbitrate the "gateway issue" of arbitrability, then this

8   this agreement is "simply an additional, antecedent agreement" that is subject to the

9   FAA. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).  Federal courts

10  therefore can enforce the agreement to arbitrate arbitrability issues by staying

11  litigation and compelling arbitration under the FAA. *Id.*

12       In this case, the Court finds the parties clearly and unmistakably agreed that

13  the arbitrator would decide the question of whether the claims at issue are arbitrable.

14  The Operating Agreement's arbitration provision provides: "Arbitration constitutes

15  the sole and exclusive remedy for the settlement of any dispute or controversy

16  concerning this Agreement . . . **including whether the dispute or controversy is**

17  **arbitrable**." (Operating Agreement art. 14 (emphasis added).) Thus, there is

18  "[c]lear and unmistakable evidence of an agreement to arbitrate arbitrability" because

19  there is an "express agreement to do so." *See Mohamed*, --- F.3d ---, 2016 WL

20  4651409, at *4; *see also, e.g.*, *Momot*, 652 F.3d at 988. Accordingly, the Court

21  concludes that the arbitrator has the authority to initially decide whether the Company

22  and CPI's claims against Fuqing fall within the scope of the Operating Agreement's

23  arbitration provision. The Company and CPI can submit their Opposition's

24  arguments on this issue to the arbitrator.

25       That said, the Company and CPI also advance two arguments against the

26  enforceability of the arbitration provision itself, which necessarily includes the

27  parties' agreement to arbitrate issues of arbitrability. First, they briefly argue that the

28  arbitration provision is invalid because it conflicts with the consent to jurisdiction

and forum selection clause in the Operating Agreement. (Opp'n 4:6–18.) Second, they also briefly argue that Fuqing waived its right to enforce the arbitration agreement altogether. (*Id.* 6:25–7:3.)

Both of these arguments also concern arbitrability, but whether these issues were similarly unmistakably delegated to the arbitrator is a closer call. This determination depends on the language and scope of the parties' agreement to arbitrate arbitrability. *See, e.g.*, *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1223–27 (E.D. Cal. 2015) (collecting cases and analyzing at length whether an arbitration clause clearly and unmistakably delegated the issue of waiver of arbitration rights to the arbitrator); *see also Morgan Stanley & Co., LLC v. Couch*, --- Fed. App'x ---, 2016 WL 4245527, at *2 (9th Cir. 2016) (discussing this issue in affirming the district court's conclusion). The district court's decision in *Morgan Stanley* illustrates this analysis in the context of a waiver claim. *See* 134 F. Supp. 3d at 1223–27. There, the court found that the following language did not unmistakably delegate the issue of waiver of the right to arbitrate to the arbitrator: "any dispute as to the arbitrability of a particular issue or claim pursuant to this arbitration provision is to be resolved in arbitration." *Id.* at 1226 (emphasis omitted). The court reasoned that this clause "can be interpreted reasonably to mean that an arbitrator should determine the scope of the agreement, that is, which causes of action properly are brought in arbitration." *Id.* at 1227. It further reasoned that the parties needed to include more explicit language if they desired to also submit to arbitration the issue of whether the defendant waived his right to arbitrate. *Id.* Thus, the court concluded the provision did not delegate the issue of waiver to the arbitrator. *Id.*

Here, by comparison, the language found in the arbitration provision concerning arbitrability that provides the arbitrator will decide "whether the dispute or controversy is arbitrable" is broader than the language in *Morgan Stanley*. *See* 134 F. Supp. 3d at 1226. The provision in this case addresses the dispute or controversy in its entirety and whether it can be arbitrated, as opposed to only "a particular claim

1  or issue" that is "to be resolved in arbitration." *See id.* However, the language in the
2  parties' provision is not more explicit than the provision in *Morgan Stanley*. For
3  example, the provision here does not provide that the arbitrator can determine a
4  dispute concerning the "validity or application of" the arbitration provision, *see*
5  *Momot*, 652 F.3d at 988, or that the arbitrator can determine any dispute relating to
6  the "interpretation, applicability, enforceability or formation of" the arbitration
7  provision, *see Anderson v. Pitney Bowes, Inc.*, No. C 04-4808 SBA, 2005 WL
8  1048700, at *1 (N.D. Cal. May 4, 2005).

9        Because this issue is a closer call and there is a presumption against the
10 delegation of arbitrability to the arbitrator, the Court concludes the parties did not
11 delegate to the arbitrator the issues of whether Fuqing waived its right to arbitrate
12 and whether the agreement to arbitrate arbitrability is valid. The Court reaches this
13 conclusion notwithstanding the fact that the Company and CPI unmistakably
14 delegated to the arbitrator the issue of whether the Company and CPI's claims fall
15 under the scope of the arbitration provision. *See Morgan Stanley*, 134 F. Supp. 3d at
16 1227 (reasoning the arbitration provision delegated to the arbitrator the issue of
17 whether the claims were subject to arbitrability, but not the issue of waiver).

18       Nevertheless, in considering the Company and CPI's abbreviated arguments
19 against the enforceability of the arbitration provision, the Court finds them
20 unpersuasive. Fuqing did not waive its right to arbitrate. The Company and CPI do
21 not meet their "heavy burden of proof" of demonstrating a waiver. *See United States*
22 *v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009). Although Fuqing filed
23 a state court action that has since been dismissed, the Company and CPI must show
24 prejudice resulting from Fuqing's conduct. *See id.* Their claim that they were forced
25 to incur expenses to move to stay the state court action is not meaningful prejudice.
26 *See, e.g.*, *Saint Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1203 (2003)
27 ("[C]ourts will not find prejudice where the party opposing arbitration shows only
28 that it incurred court costs and legal expenses.").

Further, the consent to jurisdiction and forum selection provision does not invalidate the broad arbitration provision. The Court severs the arbitration provision from "the remainder of the contract" to determine its validity. *See Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. ---, 133 S. Ct. 500, 503 (2012) (per curiam). When severed, the provision is unambiguous and is therefore enforceable. Moreover, the arbitration provision and the consent to jurisdiction and forum selection provision do not necessarily conflict. *See, e.g.*, *Mohamed*, --- F.3d ---, 2016 WL 4651409, at * 4. As the California Court of Appeal has persuasively reasoned: "No matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court . . . ." *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 555–56 (2004). This present motion to compel arbitration is an example of where both of these clauses may have an operative effect. If the parties' positions were reversed, the consent to jurisdiction clause would prevent Fuqing from arguing it is not subject to the jurisdiction of this Court. *See, e.g.*, *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court."). Thus, the arbitration provision is unambiguous, and there are persuasive reasons for including both the arbitration provision and the consent to jurisdiction and forum selection provision in the Operating Agreement.

Accordingly, the Court will grant Fuqing's request for an order compelling arbitration under 9 U.S.C. § 2 and a stay of this action under 9 U.S.C. § 3.

## III.   CONCLUSION & ORDERS

In light of the foregoing, the Court **GRANTS** Fuqing's motion to compel arbitration (ECF No. 84). The Court **ORDERS** the Company, CPI, and Fuqing to proceed to arbitration in the manner provided for in the Operating Agreement's arbitration provision. *See* 9 U.S.C. § 4.

Further, because the Court has granted Fuqing's motion to compel arbitration, the Court **TERMINATES** Fuqing's motion to dismiss and motion to disqualify (ECF No. 89). Fuqing may renew these motions in the forthcoming arbitration between the parties.

In addition, the Court **STAYS** this action as to **all parties and all claims**. *See* 9 U.S.C. § 3. During the duration of the stay, any time period for which the Company and CPI must amend their First Amended Complaint shall be **TOLLED**. (*See* Order Grant Mot. to Dismiss, ECF No. 214 at 14:14-15.)

Last, the Court directs the Clerk of the Court to **ADMINISTRATIVELY CLOSE** this case. The decision to administratively close this case pending resolution of the arbitration does not have any jurisdictional effect. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing. An order administratively closing a case is a docket management tool that has no jurisdictional effect.").

**IT IS SO ORDERED.**


**DATED:  September 30, 2016**

Hon. Cynthia Bashant
United States District Judge