1
2
3
4
5
6
7

8  **UNITED STATES DISTRICT COURT**

9  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  CRAFTY PRODUCTIONS, INC. *et al.*,

Case No. 15-cv-719-BAS-JLB

12

Plaintiffs,

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

13

14  v.

**[ECF No. 233]**

THE MICHAELS COMPANIES, INC., *et al.*,

15

16

Defendants.

17

18      Plaintiffs Crafty Productions, Inc. ("CPI") and Crafty Productions, LLC
19  ("CPL") (collectively "Plaintiffs") commenced this action against numerous
20  defendants alleging copyright infringement of CPI's original craft designs and
21  products, trade dress infringement, intentional interference with prospective business
22  advantage, unfair competition, breach of contract, and fraud. Many parties were
23  listed as defendants in the first complaint, but various defendants have been
24  dismissed for lack of personal jurisdiction. (ECF No. 213.) As relevant here,
25  Defendants The Michaels Companies, Inc. and Michaels Stores, Inc. (collectively,
26  "Michaels") and Hobby Lobby Stores, Inc. moved to dismiss Plaintiffs' prior
27  complaint for failure to state a claim. (ECF No. 90.) The Court granted the motion
28  to dismiss and granted Plaintiffs leave to amend. ("Prior Order," ECF No. 214.)

– 1 –                                    15cv719

Plaintiffs filed a second amended complaint against Michaels; Plaid Enterprises, Inc.; Hobby Lobby Stores, Inc.; Party City Holdings, Inc.; and Party City Corporation. ("SAC," Second Amended Complaint, ECF No. 232.) Plaintiffs allege trade dress infringement, intentional interference with prospective business advantage, and unfair competition. Michaels moves to dismiss the second amended complaint. ("Mot.," ECF No. 233.) Defendants Hobby Lobby; Party City Holdings, Inc.; Party City Corporation; and Plaid Enterprises, Inc. join the Motion to Dismiss with respect to paragraphs III(A)(1)-III(A)(4) and III(B) of the Motion. (ECF Nos. 235, 236, 238.) Plaintiffs filed an opposition to the Motion, ("Opp'n," ECF No. 239), and Michaels filed a reply in support of the Motion, ("Reply," ECF No. 240).

The Court finds this Motion suitable for determination on the papers and without oral argument. Civ. L. R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS** Defendants' Motion.

## I. FACTUAL BACKGROUND[1]

Plaintiff CPI has created various "original product concepts and designs, including many creative, decorative wood products." (SAC ¶ 11.) Sometime in 1995, CPI hired Michelle Faherty as a sales representative for some of its products. (*Id.* ¶ 13.) Ms. Faherty asked permission to take samples of certain products so she could obtain a manufacturing cost estimate from a factory she knew in China. (*Id.*) She did so, and then CPI began using a Chinese manufacturer owned by Kevin Xiao and/or Tony Zhu for cost-saving purposes. (*Id.*)[2]

In 2009 or 2010, CPI learned that replicas of its products were being sold in a crafts and toys product catalog from "Zhejiang Hongye Art & Craft Co., Ltd" (hereinafter, "Hongye"). (*Id.* ¶ 15.) CPI had not approved these sales and had never

---

[1] A more comprehensive background can be found in the Court's prior order, (ECF No. 214). The following background history contains the relevant allegations as to the remaining Defendants.

[2] Zhu's company is called Fuqing. (SAC ¶ 29.) Plaintiffs and Fuqing have arbitrated their claims. (ECF Nos. 215, 228.)

heard of Hongye.  (*Id.*)  CPI learned that the Hongye factory was shipping CPI's wood products to Michaels and Plaid.  (*Id.* ¶ 16.)  Plaid is CPI's competitor and supplies products to retailers, including Hobby Lobby and Michaels.  (*Id.* ¶ 19.)

CPI insisted on visiting China to meet Zhu and see his manufacturing facilities. (*Id.* ¶ 16.)  On this trip, CPI first visited the Hongye factory, where it saw on display many of CPI's "original designs and products."  (*Id.* ¶ 17.)  Faherty allegedly had to lie to the Hongye representative to arrange a tour of the factory for CPI.  (*Id.*)  "There appeared to be no effort by the manufacturer to disguise the fact that they were producing unauthorized CPI products."  (*Id.*)  CPI alleges it saw a frame at the factory that was "substantially similar to one of CPI's designs" but had the name "Plaid" on the back.  (*Id.* ¶ 19.)  CPI then visited Zhu's manufacturing facility, which contained only a few of CPI's products, and CPI was surprised that Hongye appeared to have more of CPI's designs in its factory than were in Zhu's factory.  (*Id.* ¶ 18.)  Faherty told CPI that Zhu's factory was only manufacturing CPI's products, not competitors' products.  (*Id.* ¶ 19.)

Plaintiffs allege Faherty and Zhu arranged the manufacture of "knock offs" of CPI's original designs and products to sell to Plaid and other retailers.  (*Id.* ¶ 22.) Plaintiffs allege the only way the Hongye factory would have access to CPI's products is if a retail buyer or Faherty provided the designs to the factory.  (*Id.* ¶ 32.) Plaintiffs allege Michaels was buying the knock-off products from the Hongye factory. (*Id.*)  In support, Plaintiffs allege Michaels purchased products from CPI for many years, but as of October 2014, "was buying very little from CPI" yet still selling products.  (*Id.* ¶ 46; *see, e.g.*, ECF No. 232-2, at 14–22 (images of products being sold in Michaels' stores in 2014 and 2015).)  Plaintiffs also allege CPI never sold wood alphabets to Michaels, yet Michaels has sold CPI's wood alphabets in its stores. (*Id.*)  Similarly, Plaintiffs allege Hobby Lobby purchased knock-offs of CPI's products through Faherty.  (*Id.* ¶ 51.)

/ / /

## II.    LEGAL STANDARD

A complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

## III.    ANALYSIS

Defendants' first argument is that Plaintiffs engage in improper "shotgun pleading." (Mot. at 13–14.) Rather than analyze the Complaint as a whole under this allegation, the Court will analyze the clarity and specificity of the allegations in its analysis of each cause of action below.

### A.    Copyright Infringement

The Court previously dismissed Plaintiffs' copyright infringement claims because Plaintiffs had not demonstrated "that the owner of the copyrights at issue— CPL—registered the copyrights with the Copyright Office before initiating this

1   infringement action." (Prior Order at 10.) The Court then denied Plaintiffs' motion

2   for reconsideration on the issue. (ECF No. 231.) At this point, it must be clear to all

3   Parties that the claims have been dismissed and Plaintiffs are unable to cure the issue

4   of prior registration of the copyrights. In the second amended complaint, Plaintiffs

5   include the copyright claim "only for completeness." (SAC at 1 n.1.) The claim

6   remains dismissed; thus, the Court does not analyze Defendants' Motion to Dismiss

7   the copyright claim.[3]

8   ### B.   Trade Dress Infringement / False Designation of Origin

9       "Trade dress refers generally to the total image, design, and appearance of a

10  product and 'may include features such as size, shape, color, color combinations,

11  texture or graphics.'" *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257

12  (9th Cir. 2001) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819,

13  822 (9th Cir. 1993)). To plead a claim for trade dress infringement, a plaintiff must

14  allege: (1) that its claimed dress is non-functional; (2) that its claimed dress serves a

15  source-identifying role either because it is inherently distinctive or has acquired

16  secondary meaning; and (3) that the defendant's product or service creates a

17  likelihood of consumer confusion. *Id.* (citing *Disc Golf Ass'n, Inc. v. Champion*

18  *Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998); *Fuddruckers, Inc. v. Doc's B.R.*

19  *Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987)).

20      Defendants move to dismiss Plaintiffs' trade dress claim because "Plaintiffs

21  fail to identify a protectable trade dress." (Mot. at 15.) Plaintiffs claim their trade

22  dress is their "original designs and products." (SAC ¶ 61.) As examples of trade

23  dress, Plaintiffs point to "all of the designs and products depicted" in Exhibits A

24  through H and U. (*Id.*) The referenced exhibits include hundreds of pictures of

25

26  [3] Defendants request the Court sanction Plaintiffs for including the copyright claim in the second
    amended complaint or award Defendants their attorney's fees spent responding to the claim. (Mot.
27  at 9.) Although it was admittedly unnecessary for Plaintiffs to include the copyright claim in the
    operative complaint, Defendants were not required to spend substantial time moving to dismiss the
28  claim. The Court finds sanctions and an attorney's fees award are unnecessary.

Plaintiffs' products. (ECF Nos. 232-2 to 232-9 and 232-22 to 232-23.) Plaintiffs include no further details as to what the general "design" of the products entails. Plaintiffs include examples of certain features of various products that they allege to be non-functional, for example "the shape and look of the hair and ears" of a vampire-shaped wooden mask. (*Id.* ¶ 68; ECF No. 232-2, at 13.) But Plaintiffs are not alleging their protectable design is based on the distinct "hair and ears" features. Nor could it, as all products in the referenced exhibits are different and not every product has "hair and ears."

In viewing the pictures Plaintiffs attach as "examples" of their trade dress, it is immediately clear to the Court that the products are all different. The products' only similarity is that they are crafts or decorations. But it is beyond debate that the products are still vastly different in terms of looks and design. Plaintiffs' products include a yoyo with a frog etched on the top; a hanging bird ornament; a wooden paddle with a ball attached to it by a string; a fabric heart necklace—and the list goes on. (ECF No. 232-2.)[4] The clear differences in the "design" of the products are an issue.

---





In *Walt Disney Co. v. Goodtimes Home Video Corp.*, 830 F. Supp. 762, 766 (S.D.N.Y. 1993), Disney sought to protect the packaging it used for seventeen videocassettes. The court explained that because Disney sought protection for a line of products, Disney bore "a burden which most plaintiffs alleging trade dress infringement do not need to carry . . . Disney must establish that its videocassette packages have a consistent overall look." *Id.* at 766. The *Disney* court was the first to set forth the "consistent overall look" standard. *See also Rose Art Indus., Inc. v. Swanson*, 235 F. 3d 165, 172 (3rd Cir. 2000) (adopting the "consistent overall look" standard when the plaintiff seeks protection for a series or line of products). The "consistent overall look" test requires the trade dress convey "a single and continuing commercial expression." *Id.* at 173.

The Ninth Circuit has not yet adopted the "consistent overall look" test for trade dress claims based on a line of products. *See Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*, 57 F. Supp. 3d 1203, 1223 (C.D. Cal. 2014).[5] But a leading trademark treatise notes,

> When the alleged trade dress consists of a certain look or style of different packaging for a number of different products, it is more difficult to prove that there is a common denominator among those packages which identifies plaintiff as the source. Plaintiff must prove that its alleged trade dress has a "consistent overall look."

1 McCarthy on Trademarks and Unfair Competition § 8:5.50 (5th ed. 2019). As

---

[5] Other circuits have adopted the test and require the plaintiff to establish a consistent look when seeking trade dress for a line of products or images. *See AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 814 (7th Cir. 2002) ("When considering a claimed family of trade dress, courts apply a 'consistent overall look' standard."); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001) (holding a plaintiff may only seek trade dress protection for an entire product line if it establishes the "overall look" in each separate product is "consistent" and a plaintiff must "articulate the design elements that compose the trade dress"); *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 142 (4th Cir. 2000) (finding no trade tress when plaintiff's "configurations differ from facility to facility, denying it a single model from which to distinguish the numerous similar configurations used by other . . . establishments").

detailed below, it is clear to the Court that Plaintiffs' products, when taken as a whole, present no consistent look. And even without the "consistent overall look" test, the Court finds it is insufficient for Plaintiffs to allege trade dress protection over a general "design," with no further detail, that would cover dozens of dissimilar products. To grant such far-reaching, undefined trade dress protection would unfairly allow inventors to claim any broad design and would leave no room for competition.

Plaintiffs seek to protect the trade dress covering a line of products that share little in common. Plaintiffs' broadly claimed trade dress includes "the design" of the products. (SAC ¶ 61.) But as a whole, the products differ vastly—they are made of different materials, are different shapes, serve different purposes, and have different designs. A square wooden puzzle with a Christmas tree stenciled on the top looks different than a wooden vampire mask and different than a felt purse with the word "Boo!" colorfully printed on the outside. (*See* ECF No. 232-2.) And how can the design of a sticker book of owls consist of the same design as a wooden gingerbread house or a wooden cube-shaped photo holder? (*Id.*)[6] The above examples are just some of the few products Plaintiffs seek to protect under one broad trade dress. (SAC ¶ 61 (Plaintiffs claiming their alleged trade dress covers "all of the designs and products depicted in Exhibits A–H and U").) For the Court to grant such broad protection would be simply improper.

Indeed, many courts require a plaintiff to "clearly articulate its claimed trade



[6] *See, e.g.,*

dress to give a defendant sufficient notice." *Salt Optics, Inc. v. Jand, Inc.*, No. SACV 10-828 DOC (RNBx), 2010 WL 4961702, *4–6 (C.D. Cal. 2010) (citing *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007)). "[T]he motivation for requiring strict definition [of the product's design] is that 'trade dress claims raise a potent risk that relief will impermissibly afford a level of 'protection that would hamper efforts to market competitive goods.'" *Walker & Zanger*, 549 F. Supp. 2d at 1175–76 (citation omitted). Plaintiffs here do not do so, and the claim for protection of trade dress of "the design" of such a wide variety of products does not give a competitor sufficient notice of what is to be protected. *See Keep a Breast Found. v. Seven Grp.*, No. 11-cv-570-BEN (WMc), 2011 WL 3240756, at *2 (S.D. Cal. July 28, 2011) (finding the plaintiff did not sufficiently describe its trade dress when it alleged the defendant "adopted the overall look and feel" of the products but plaintiff did not "describe, or even list, the elements that compose the 'overall look and feel' of their products"); *Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010) (finding that the plaintiff did not provide "an adequate definition of the elements comprising the website's 'look and feel,'" because "[a]lthough it has cataloged several components of its website, Plaintiff has not clearly articulated which of them constitute its purported trade dress").

For these reasons, the Court finds Plaintiffs have not sufficiently pled protectable trade dress. And although Defendants ask the Court not to do so, the Court will grant Plaintiffs leave to amend, to the extent Plaintiffs can more clearly describe the trade dress they seek to protect. *See Creative Co-Op, Inc. v. Elizabeth Lucas Co.*, No. CV 11-116-S-REB, 2012 WL 761736, at *3 (D. Idaho Mar. 7, 2014) (finding in many cases, "courts allow leave to amend to re-state the trade dress allegations in detail"). Because the Court finds that Plaintiffs do not sufficiently describe their proposed trade dress, it need not reach whether Plaintiffs sufficiently plead the elements of likelihood of confusion or distinctiveness/secondary meaning.

Accordingly, Defendants' Motion to Dismiss the trade dress infringement claim is **GRANTED** and the claim is dismissed without prejudice.

### C.  False Designation of Origin – California Law

Plaintiffs next bring a cause of action "under California law, including under Cal. Bus. & Prof. Code § 14200 *et seq.* (California's Model State Trademark Law), § 17500, and under the common law protections against trade dress infringement, dilution and palming off." (SAC ¶ 96.)

First, as to the state law trademark claims, these claims are based on the same allegations as the federal trademark claims. (*Id.* ¶¶ 95–96.)  Claims for trademark infringement under California law are "subject to the same legal standards" as Lanham Act claims. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1221 (9th Cir. 2012).  Because the Court grants the Motion to Dismiss the claim of federal trademark infringement, the Court also **GRANTS** the Motion to Dismiss the claim of trademark infringement under state law.  If Plaintiffs re-allege this claim in their amended complaint, they must provide the specific statute(s) of the Model State Trademark Law upon which their claim is based.

Second, Plaintiffs only include a bare reference to section 17500.  This code section prohibits any statement in connection with the sale of goods "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.  The Complaint contains no facts behind the reference to section 17500 and Plaintiffs do not discuss this cause of action at all it in their Opposition.  The Court **GRANTS** the Motion to Dismiss any false advertising claim.

### D.  Remaining State Law Claims

Defendants argue the Court should dismiss the remainder of Plaintiffs' state law claims as preempted.  The Copyright Act of 1976 expressly preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by" the Act. 17 U.S.C. § 301(a).  Two conditions

must be met for the Copyright Act to preempt a state law. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008). "'First, the content of the protected right must fall within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act.'" *Id.* (quoting *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001)). In other words, "[i]f a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005). The extra element in the state law must effectively change "the nature of the action so that it is qualitatively different from a copyright infringement claim." *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993) (quotations and edits omitted).

Plaintiffs' state law claims are intentional interference with prospective economic advantage and violation of California's unfair competition law. Defendants appear to assume the products are copyrightable under the first condition of the *Sybersound* test, therefore, the issue becomes whether the rights under the state laws are the same as the rights protected under the Copyright Act.[7]

### 1. Intentional Interference with Prospective Economic Advantage

To establish a claim of intentional interference with prospective economic advantage, a plaintiff must show

> (1) an economic relationship between the plaintiff and a third party, with a probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of this relationship; (3) intentional and

---

[7] Plaintiffs first argue that the state law claims cannot be preempted because "CPI's copyright claims have already been dismissed." (Opp'n 11.) This is immaterial. Certain state law claims are preempted by the Copyright Act itself, not by the specific copyright claims in a plaintiff's complaint.

15cv719

wrongful conduct on the part of the defendant, designed to interfere with or disrupt the relationship; (4) actual disruption or interference; and (5) economic harm the plaintiff as a proximate result of the defendant's wrongful conduct.

*Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 713 (2007).

Here, the gist of Plaintiffs' claim is that Defendants knew of Plaintiffs' relationship with Fuqing but "went around" Plaintiffs to get cheaper pricing on the products from Fuqing, then sold the products in their stores without Plaintiffs' permission. (SAC ¶¶ 103–105.) Defendants allegedly contacted Fuqing and ordered Plaintiffs' designs and products directly through Fuqing rather than involving or paying Plaintiffs. (*Id.* ¶ 104.) By doing so, Defendants were able to secure "factory-direct" pricing from Fuqing. (*Id.* ¶ 103.) Then Defendants distributed, and/or sold Plaintiffs' designs or products. (*Id.* ¶ 105.) Thus, Defendants intentionally interfered with Plaintiffs' business with "customers, manufacturers, and potentially others." (*Id.* ¶ 105.) Defendants move to dismiss the claim as preempted.

Plaintiffs' opposition to Defendants' preemption argument is a total of one paragraph. (Opp'n 11.) Plaintiffs argue this claim is not preempted because it is based on Defendants "interfering with CPI's exclusive relationship with its manufacturer Fuqing." (*Id.*) Plaintiffs conclude the paragraph by throwing in the vague and unhelpful ending: "[t]his is much more involved conduct than just copying a proprietary design, and involves much different elements and factual proof." (*Id.*)

In *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810 (N.D. Cal. 2008), the plaintiff painted three paintings and sold a limited number of prints of her works. The plaintiff alleged the defendant Barry purchased her paintings, but then unlawfully reproduced the works and sold copies to defendant Hilton Hotels. *Id.* at 815. The court found the plaintiff's intentional interference claim was not preempted because "[f]ederal copyright law does not address defendants' alleged interference with the contracts plaintiff entered into with other customers who purchased" plaintiff's limited-edition prints. *Id.* at 822. The court noted in cases "in which a

third-party contractual relationship is alleged to have been disrupted by a defendant's infringement of a copyright, '[m]ost courts have held that the Copyright Act does *not* preempt the enforcement of contractual rights.'" *Id.* (quoting *Altera Corp.*, 424 F.3d at 1079). Because the plaintiff had alleged the market for her products depends on there being a limited number of them, and that the market had suffered as a result of the defendant's actions, an element beyond copyright infringement existed. *Id.* at 823. The court found the cause of action not to be preempted.

But other courts have held differently, finding a plaintiff's intentional interference with economic advantage claim to be preempted in similar situations. In *Media.net Advertising FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1072 (N.D. Cal. 2016), the plaintiff argued the defendant infringed the plaintiff's copyright by copying plaintiff's HTML code. Because the plaintiff and defendant were competitors, the copying gave the defendant an unfair competitive advantage and undermined the plaintiff's relationship with Microsoft. The court held the plaintiff's intentional interference claim "is predicated on Defendant's unauthorized copying of Plaintiff's HTML code, in violation of its statutory rights under the Copyright Act." *Id.* at 1073. The court distinguished the decision in *Brackett*, where the defendant had permission to purchase plaintiff's artwork but "exceeded the scope of his permitted use" when he reproduced the work. *Id.* at 1072 n.10. Therefore the "core violation" in *Brackett* was the breach of contractual limitation, as compared to a copyright violation at issue in *Media.net*. *Id.* The *Media.net* decision is consistent with other opinions where courts have held the "extra elements" in intentional interference with prospective economic advantage "of showing an economic relationship between the plaintiff and a third party that a defendant knew of, intentionally designed to disrupt, and actually disrupted are not 'qualitatively different' elements, and these additional requirements do not bring such a claim outside the scope of Copyright Act preemption." *Wilder v. CBS Corp.*, No. 2:12-CV-8961-SVW-RZ, 2016 WL 693070, at *8 (C.D. Cal. Feb. 13, 2016) *Idema v.*

15cv719

*Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1193 (C.D. Cal. 2001) ("Plaintiffs merely claim that Defendants copied the contents of [the story] *with the intent* of interfering with some unspecified possibilities that Plaintiffs would be able to sell that story to one or more potential buyers. This is merely a restatement of Plaintiffs' copyright claim, and on that basis is preempted.");

The main question here is, what is the nature of this cause of action? "[W]hether this claim is preempted ultimately turns on whether the gravamen of Plaintiff's claim is an alleged violation of Plaintiff's exclusive rights under the Copyright Act." *220 Laboratories, Inc. v. Babaii*, No. CV 08–6125 PSG (SSx), 2008 WL 5158863, *8 (C.D. Cal. Dec. 8, 2008). Plaintiffs make it clear this is about more than simply Defendants interrupting the contract between Plaintiffs and Fuqing; instead, the claim is about the copyrighted works themselves. Plaintiffs allege, "<u>through its acts of manufacturing, distributing and/or selling</u> Plaintiffs' original and/or substantially similar designs or products without authorization from Plaintiffs, each Defendant has intentionally interfered with Plaintiffs' existing and prospective business with these customers." (SAC ¶ 105 (emphasis added).)[8]

"[F]ederal copyright laws already protect the exclusive right of distribution." *Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004). If the claim "is predicated on the unauthorized reproduction of creative work" then the claim is preempted. *220 Laboratories*, 2008 WL 5158863, *8; *see also TV One LLC v. BET Networks*, No. CV 11-8983 MMM (Ex), 2012 WL 13012674, at *10 (C.D. Cal. Apr. 2, 2012) (finding preemption when plaintiff's tortious interference claim

---

[8] In their opposition, Plaintiffs contradict their Complaint. They argue the intentional interference claim "is based not on Defendants' acts of 'manufacturing, distributing and/or selling the alleged copyrighted works,' but instead on the acts of interfering with CPI's exclusive relationship with its manufacturer Fuqing." (Opp'n 11.) The Court relies on what Plaintiffs plead in the Complaint, not their explanation in the opposition.

Further, the Court notes there is no support for the allegation that Defendants manufactured the allegedly infringing products, instead, the allegation is that they distributed and/or sold the products.

was based on defendants' "broadcast of the allegedly infringing program, the same wrongful act that is the basis of its copyright infringement claim"); *Wilder*, 2016 WL 693070, at \*6 (noting courts considering claims of intentional interference with prospective economic advantage have held the claim to be preempted "when based on an allegation that a defendant used a plaintiff's idea without her authorization").

Here Plaintiffs make it clear they are accusing Defendants of distributing and/or selling Plaintiffs' copyrighted designs without Plaintiffs' authorization. (SAC ¶ 105.) These rights are already protected by federal copyright law. Plaintiffs' claim of intentional interference is "predicated on" the allegation that Defendants sold the copyrighted works, even though the claim also involves the element of Defendants interfering with the Fuqing relationship in order to obtain those works. *See Media.net*, 156 F. Supp. 3d at 1073; *Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1240 (C.D. Cal. 1987) (holding "[e]lements such as awareness or intent may alter the scope of the action but not its nature" and finding the intentional interference claim preempted). Plaintiffs' claim is therefore not "qualitatively different" from a copyright infringement claim. *Altera Corp.*, 424 F.3d at 1089. The Court finds Plaintiffs have done nothing more than "dress[ ] up" a copyright infringement claim "to look like [a] state law claim[ ]." *Sybersound Records*, 517 F.3d at 1150. For these reasons, the Court finds Plaintiffs' intentional interference claim to be preempted. The Court **GRANTS** Defendants' Motion to Dismiss the intentional interference cause of action.[9] However, the Court grants

---

[9] Michaels also argues Plaintiffs fail to state a claim under Rule 12(b)(6) for intentional interference because they have not "specifically allege[d] how Michaels interfered with Plaintiffs' prospective economic advantage." (Reply 4.) The Court disagrees; Plaintiffs have alleged all Defendants (who are retailers or distributors of craft goods) knew of Plaintiffs' relationship with Fuqing and intentionally disrupted this relationship by buying the products directly from Fuqing and distributing the products without Plaintiffs' involvement. (SAC ¶¶ 101–104.) If third party retailer-sellers buy products directly from the manufacturer rather than the designer of the products (so that the retailer-sellers can pay less for the products), the business relationship between the designer and the manufacturer is disrupted. Although the claim is preempted, it contains sufficiently plausible allegations.

1  Plaintiffs leave to amend the claim to the extent Plaintiffs can include sufficient
2  factual allegations to demonstrate the claim is not preempted.

### 2.  Unfair Competition

4      The Ninth Circuit has explicitly found that claims of unfair competition
5  brought under California's Business and Professions Code § 17200 are preempted if
6  they are based on rights granted by the Copyright Act. *See Kodadek v. MTV*
7  *Networks, Inc.,* 152 F.3d 1209, 1213 (9th Cir. 1998); *see also Wild v. NBC Universal,*
8  *Inc.*, 788 F. Supp. 2d 1083, 1111 (C.D. Cal. 2011) (finding an unfair competition
9  claim preempted by the Copyright Act where the plaintiff alleged that the defendants
10  had "improperly and unlawfully taken commercial advantage of [plaintiff's]
11  investment in his copyright works").

12      A plaintiff properly pleads a claim for unfair competition when the plaintiff
13  alleges facts that show any unlawful, unfair, or fraudulent business act or practice.
14  Cal. Bus. & Prof. Code § 17200.  A business practice is "unfair" where it "offends
15  an established public policy or when the practice is immoral, unethical, oppressive,
16  unscrupulous or substantially injurious to consumers." *Gemisys Corp. v. Phoenix*
17  *Am., Inc.*, 186 F.R.D. 551, 564 (N.D. Cal. 1999) (internal quotations omitted).

18      Plaintiffs' unfair competition allegation stem from Defendants' acts
19  "constituting intentional interference with prospective economic advantage." (SAC
20  ¶ 109.)  It appears the "unfair" act is Defendants' alleged interference with Plaintiffs'
21  relationship with Fuqing.  Thus, the same findings apply for this cause of action as
22  they did for the intentional interference cause of action.  The Court finds Plaintiffs'
23  unfair competition claim to be preempted and **GRANTS** Defendants' Motion to
24  Dismiss the cause of action.  As noted above, the Court grants Plaintiffs leave to
25  amend the claim.

## IV.  CONCLUSION

27      For the foregoing reasons, the Court **GRANTS** Defendants' Motion to
28  Dismiss in its entirety.  However, the Court grants Plaintiffs leave to amend the

15cv719

complaint. As noted, the copyright claims remain dismissed, and if Plaintiffs choose to leave the claims in the complaint "for completeness," Defendants need not again move to dismiss them. Plaintiffs are granted leave to amend their trade dress claims. Finally, the Court will grant Plaintiffs one final opportunity to amend their intentional interference and unfair competition claims to the extent they can show the claims are not preempted. Plaintiffs may file an amended complaint on or before July 8, 2019.

**IT IS SO ORDERED.**

**DATED: June 10, 2019**

Hon. Cynthia Bashant
United States District Judge