# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAFTY PRODUCTIONS, INC., *et al.*,<br><br>                    Plaintiffs,<br><br>   v.<br><br>THE MICHAELS COMPANIES, INC., *et al.*,<br><br>                    Defendants. | Case No. 15-cv-719-BAS-JLB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT AND DISMISSING CASE WITH PREJUDICE**<br><br>**[ECF No. 246]** |

Plaintiffs Crafty Productions, Inc. ("CPI") and Crafty Productions, LLC ("CPL") (collectively "Plaintiffs") commenced this action against numerous defendants alleging copyright infringement of CPI's original craft designs and products, trade dress infringement, intentional interference with prospective business advantage, unfair competition, breach of contract, and fraud. Many parties were listed as defendants in the first complaint, but various defendants have been dismissed for lack of personal jurisdiction. (ECF No. 213.) As relevant here, Defendants The Michaels Companies, Inc. and Michaels Stores, Inc. (collectively, "Michaels") and Hobby Lobby Stores, Inc. moved to dismiss Plaintiffs' complaint for failure to state a claim. (ECF No. 90.) The Court granted the motion to dismiss and granted Plaintiffs leave to amend. (ECF No. 214.) Plaintiffs filed a second

amended complaint against Michaels; Plaid Enterprises, Inc.; Hobby Lobby Stores, Inc.; Party City Holdings, Inc.; and Party City Corporation. ("SAC," Second Amended Complaint, ECF No. 232.) Plaintiffs alleged trade dress infringement, intentional interference with prospective business advantage, and unfair competition. Defendants filed a motion to dismiss the second amended complaint, which the Court granted in its entirety and dismissed the SAC without prejudice. ("Prior Order," ECF No. 241.) Plaintiffs filed their Third Amended Complaint, again alleging trade dress infringement, intentional interference with prospective business advantage, and unfair competition. ("TAC," Third Amended Complaint, ECF No. 245.) Michaels moves to dismiss the TAC, ("Mot.," ECF No. 246), and the rest of the Defendants join the Motion, (ECF Nos. 247–249). Plaintiffs filed an Opposition to the Motion, ("Opp'n," ECF No. 250), to which Michaels replied, ("Reply," ECF No. 251).

The Court held oral argument on this Motion on December 4, 2019. For the reasons stated below, the Court **GRANTS** Defendants' Motion and dismisses Plaintiffs' Third Amended Complaint with prejudice.

## I. FACTUAL BACKGROUND[1]

Plaintiff CPI has created various "original product concepts and designs, including many creative, decorative wood products." (TAC ¶ 10.) Sometime in 1995, CPI hired Michelle Faherty as a sales representative for some of its products. (*Id.* ¶ 12.) Ms. Faherty asked permission to take samples of certain products so she could obtain a manufacturing cost estimate from a factory she knew in China. (*Id.*) She did so, and then CPI began using a Chinese manufacturer owned by Kevin Xiao and/or Tony Zhu for cost-saving purposes. (*Id.*)[2]

In 2009 or 2010, CPI learned that replicas of its products were being sold in a

---

[1] A more comprehensive background can be found in a prior order issued by this Court, (ECF No. 214). The following background history contains the relevant allegations as to the remaining Defendants.

[2] Zhu's company is called Fuqing. Plaintiffs and Fuqing have arbitrated their claims. (ECF Nos. 215, 228.)

crafts and toys product catalog from Zhejiang Hongye Art & Craft Co., Ltd. (hereinafter, "Hongye"). (*Id.* ¶ 14.) CPI had not approved these sales and had never heard of Hongye. (*Id.*) CPI learned that the Hongye factory was shipping CPI's wood products to Michaels and Plaid Enterprises, Inc. ("Plaid"). (*Id.* ¶ 15.) Plaid is CPI's competitor that supplies products to retailers including Hobby Lobby and Michaels. (*Id.* ¶ 18.)

CPI insisted on visiting China to meet Zhu and see his manufacturing facilities. (*Id.* ¶ 15.) On this trip, CPI first visited the Hongye factory, where it saw on display many of CPI's "original designs and products." (*Id.* ¶ 16.) Faherty allegedly had to lie to the Hongye representative to arrange a tour of the factory for CPI. (*Id.*) "There appeared to be no effort by the manufacturer to disguise the fact that they were producing unauthorized CPI products." (*Id.*) CPI alleges it saw a frame at the factory that was "substantially similar to one of CPI's designs" but had the name "Plaid" on the back. (*Id.* ¶ 18.) CPI then visited Zhu's manufacturing facility, which contained only a few of CPI's products, and CPI was surprised that Hongye appeared to have more of CPI's designs in its factory than were in Zhu's factory. (*Id.* ¶ 17.) Faherty told CPI that Zhu's factory was only manufacturing CPI's products, not competitors' products. (*Id.* ¶ 18.)

Plaintiffs allege Faherty and Zhu arranged the manufacture of "knock offs" of CPI's original designs and products to sell to Plaid and other retailers. (*Id.* ¶¶ 29, 30.) Plaintiffs allege the only way the Hongye factory would have access to CPI's products is if a retail buyer or Faherty provided the designs to the factory. (*Id.*) Plaintiffs allege Michaels was buying the knock-off products from the Hongye factory. (*Id.*) In support, Plaintiffs allege Michaels purchased products from CPI for many years, but as of October 2014, "was buying very little from CPI" yet still selling products. (*Id.* ¶ 44; *see, e.g.*, ECF No. 245-1, at 11, 16, 17 (images of products being sold in Michaels' stores in 2014 and 2015).) Plaintiffs also allege CPI never sold wood alphabets to Michaels, yet Michaels has sold CPI's wood alphabets in its stores.

(*Id.* ¶ 44.) Similarly, Plaintiffs allege Hobby Lobby purchased knock-offs of CPI's products through Faherty. (*Id.* ¶ 49.)

Now, Plaintiffs allege trademark infringement, intentional interference with prospective economic advantage, and unfair competition causes of action against Michaels, Plaid, Hobby Lobby, and Party City.

## II. LEGAL STANDARD

A complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

## III. ANALYSIS

Defendants move to dismiss all three causes of action in the Third Amended Complaint.

### A. Trade Dress Infringement / False Designation of Origin

"Trade dress refers generally to the total image, design, and appearance of a product and 'may include features such as size, shape, color, color combinations, texture or graphics.'" *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)). To plead a claim for trade dress infringement, a plaintiff must allege: (1) that its claimed dress is non-functional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion. *Id.*

#### 1. Collateral Estoppel

Defendants first move to dismiss the trade dress claim on collateral estoppel grounds. (Mot. at 14.) Defendants point out that Plaintiffs were parties to an arbitration in February 2018, and they argue the arbitrator's findings prevent Plaintiff from arguing trade dress infringement here. (*Id.*) The arbitrator analyzed Plaintiffs' trade dress claim and found "no protectable trade dress in this matter." (Ruling After Full Arbitration, ECF No. 217-1, at 8.) The Defendants here were not parties to the arbitration.

Collateral estoppel "bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). Here, Defendants assert non-mutual defensive collateral estoppel, which arises "wherein a litigant not a party to a prior case seeks to preclude relitigation of an issue by its current opponent who was a party to the prior case and lost on the very issue which the opponent seeks to relitigate in the current action." *Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1038 (N.D. Cal. 1990) (citing *Blonder–Tongue Labs. v. Univ. of Illinois*, 402 U.S. 313 (1971)). To prevail on an assertion of non-mutual defensive collateral estoppel, Defendants must show:

> 1) the issue decided in a prior adjudication is identical with that presented in the action in question; *and* 2) there was a final judgment on the merits; *and* 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication.

*Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 874 (1978).

Turning to the first prong, Defendants assert that the issues decided in arbitration are identical to those here, as Plaintiffs sought trade dress protection in arbitration for the same products at issue here. In response, Plaintiffs allege "there is nothing in the arbitration ruling that established as law of the case that the same product trade dress rights asserted against these Defendants were assessed in any way by Judge McCurine." (Opp'n at 4.) Notably, Plaintiffs do not say in any conclusive manner that the arbitrator analyzed trade dress protection for products different than the ones shown in the exhibits attached to Plaintiffs' Complaint here. And while it is very likely that at least some of the products analyzed by the arbitrator are the same products before the Court now, this detail is not specified in the record. The arbitrator notes that he analyzed "the infringed products" and "Crafty's trade dress" but he does not detail which products he reviewed, only referring to them as "the various products." (ECF No. 217-1, at 7–8.)

"The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment. 'It is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated.'" *Clark*, 966 F.2d at 1321 (citation omitted)). Without proof that the products are the same, the Court cannot determine that the trade dress issue decided by the arbitrator is "identical" to the issue here. Defendants have not met their burden, and the Court therefore declines to dismiss Plaintiffs' trade dress claims under collateral estoppel.

### 2. Trade Dress Infringement

The Court turns to Defendants' alternative trade dress argument. As they did

in their last motion, Defendants move to dismiss Plaintiffs' trade dress claim because Plaintiffs have not identified a protectable trade dress. (Mot. at 15.) In their prior complaint, Plaintiffs had broadly claimed their trade dress to be their "original designs and products." (SAC ¶ 61.) Plaintiffs pointed to hundreds of products that contained the alleged protectable design, and Plaintiffs generically referred to the design covering all products as "the Crafty Trade Dress." The Court found this description to be too broad because the products sought to be protected did not share the same "design" and differed greatly. "[I]t is insufficient for Plaintiffs to allege trade dress protection over a general 'design,' with no further detail, that would cover dozens of dissimilar products." (Prior Order at 8.) Because Plaintiffs had not clearly articulated their trade dress, the Court dismissed the claims.

### a. Protectable Trade Dress

Now, Plaintiffs admit that their trade dress (still covering hundreds of products) does not possess a "consistent overall look." "Rather the numerous particular trade dress rights alleged include each of the individual, protectible trade dress rights associated with each individual, distinctive Crafty product design." (TAC ¶ 56.) Plaintiffs believe Defendants misappropriated many different products, and each product has protectable trade dress. (Opp'n at 2.) Again, Plaintiffs seek to protect "all of the designs and products depicted in Exhibits A–H and U." (*Id.* at 5.) As the Court previously noted, "[t]he referenced exhibits include hundreds of pictures of Plaintiffs' products." (Prior Order at 5–6.)

The Court's first inquiry is whether Plaintiffs have sufficiently alleged they have protectable trade dress. The Court must tackle this issue before it determines whether the trade dress is non-functional and distinctive. Plaintiffs argue that because they include pictures of their products, this is sufficient to show the protectable products. (Opp'n at 5 (citing *Vision Quest Indus., Inc. v. Ortho Sys.*, No. 17-cv-1395-CAB-NLS, 2017 WL 4169764, at *2 (S.D. Cal. Sept. 20, 2017); *see also Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SACV150246DOCDFMX, 2016

WL 6138416, at *3 (C.D. Cal. May 6, 2016) ("An image of the trade dress and of the allegedly infringing marks greatly assists courts in clarifying what design or mark a plaintiff seeks to protect."). Plaintiffs are now making clear that they are seeking trade dress protection for each individual product in all exhibits attached to the Complaint. Thus, Plaintiffs are asking the Court to determine if each product is protectable.

"The 'trade dress' of a product is essentially its total image and overall appearance." *Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1 (1992) (quoting *Blue Bell Bio–Medical v. Cin–Bad, Inc*., 864 F.2d 1253, 1256 (5th Cir. 1989)). "It 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'" *Id.* (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983)). Protectable trade dress may be the "entire design" or "overall appearance" of a product; "the basic connotation is 'what the product looks like, viewed as a whole.'" *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.,* 199 F.3d 1009, 1011 n.3 (9th Cir. 1999). The Supreme Court has instructed that when a trade dress claim is asserted on the design of a product, "courts should err on the side of caution" because "product design almost invariably serves purposes other than source identification." *Wal–Mart Stores, Inc. v. Samara Bros, Inc.*, 529 U.S. 205, 213, 216 (2000).

Here, Plaintiffs define the trade dress as the "design" of each product. Doing so is not necessarily improper. *See Leatherman Tool Grp.*, 199 F.3d at 1001 n.3. But when the trade dress sought to be protected "constitutes the product itself," Plaintiffs

> bear the burden of establishing first, that the features sought to be protected are *not* functional, but were selected arbitrarily or for purely aesthetic reasons; second, that the design has acquired a distinctive meaning such that consumers identify the trade dress with the *source* of the product rather than the product itself; and third, that the infringing

product is likely to cause confusion as to its origin.

*Glob. Mfg. Grp., LLC v. Gadget Universe.Com*, 417 F. Supp. 2d 1161, 1167 (S.D. Cal. 2006).

Plaintiffs are asking the Court to look to each individual product in Exhibits A through H and Exhibit U to determine whether Plaintiffs have plausibly pled that each product has protectable trade dress. While pictures of products certainly help the Court in understanding what is to be protected, merely attaching hundreds of images requires the Court to do all of the work for Plaintiffs.[3] In any event, Plaintiffs trade dress claim fails for the reasons articulated below.

### b. Nonfunctionality

"The physical details and design of a product may be protected under the trademark laws only if they are nonfunctional. . . ." *Clamp Mfg. Co. v. Enco Mfg. Co., Inc.*, 870 F.2d 512, 515 (9th Cir. 1989). "For an overall product configuration to be recognized as a trademark, the entire design must be nonfunctional." *Id.* at 516; *see also Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 786 (9th Cir. 2002) (foreclosing a finding of nonfunctionality where "the whole is nothing other than the assemblage of functional parts").

Plaintiffs point to a wooden mask as an "example" that all of Plaintiffs' products "have nonfunctional, artistic features including (but not limited to) the overall shape and 'look' of the characters, the shape and look of the hair and ears, the shape and look of the eyebrows, the shape and look of the nose, the shape and look of the mouth, the shape and look of the collar, and the shape and look of the

/ / /

---

[3] Plaintiffs do not include images of each allegedly infringing product found in Defendants' stores, so the Court is not able to compare each of Plaintiffs' products to each of Defendants' products. (*See, e.g.*, ECF Nos. 254-21 and 254-22 (images of Plaintiffs' products with no comparison).)

bowtie." (TAC ¶ 63.)[4]  Plaintiffs point to similar nonfunctional features of other products in Exhibits A, B, and C. (*Id.* ¶¶ 64–70 (pointing out the "shape and 'look'" of various characters).)[5]

Plaintiffs are basically asking the Court to either: (1) use the eight products as examples of hundreds of products and determine that all products are nonfunctional based on this limited representation, or (2) laboriously look into each of the hundreds of products in Exhibits A through H and U and evaluate each for evidence of

---

[4] One of the wooden masks that Plaintiffs seek to protect:



[5] For example, Plaintiffs note the "nonfunctional" features of the snowman character including the shape and look of the hat, eyes, nose, scarf, body, and buttons:



(ECF No. 245-2, at 4.) Plaintiffs also note the "nonfunctional" features of the frog including the shape of the mouth, legs, body, and flower:



(ECF No. 245-3, at 9.)

nonfunctionality. Either way, Plaintiffs do not succeed.

Looking at the products Plaintiffs use as examples, it is evident that Plaintiffs do not plausibly show that the trade dress is nonfunctional. As the Ninth Circuit explained:

> Trade dress must be viewed as a whole, but where the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to result in superior performance, it is semantic trickery to say that there is still some sort of separate "overall appearance" which is non-functional. If it is permissible to draw a distinction between such an object and its "general appearance," then virtually nothing is utilitarian, and virtually the only product designs which could be copied faithfully are those which are widely used and therefore in the public domain.

*Leatherman Tool Grp.*, 199 F.3d at 1013.

In a similar case, another court evaluated the functionality of plush toys. It concluded although the toys had aesthetic features, these were "essential selling features of the toys." *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1147 (C.D. Cal. 2009). Specifically, "the eyes of the toys are functional because they are essential to the goal of making the plush toys look like animals; this is because plush toys without eyes would not resemble their counterparts in nature. To the extent that other attributes, such as the shape and coloration of the toys, are designed to make them resemble an animal, it is similarly unlikely that [plaintiff] will be able to prove nonfunctionality." *Id.* "A manufacturer or designer has an incentive to make a china pattern or plush toy aesthetically pleasing because that drives the consumer's decision to buy the plate or toy. Such designs are, therefore, functional." *Id.*

The same result applies here. The shape of the wooden mask drives the consumer's decision to buy the mask. The consumer is looking for a mask shaped like a certain character, therefore, there is no point in buying it without the mask looking like a vampire and containing eye holes where the consumer may look through. These are functional features as they "are essential to the goal of making the" wooden cardboard piece look like a vampire and a mask. *See id.* The same

analysis applies to the other examples Plaintiffs provide. Plaintiffs seek to protect the entire "design" of each product, but the products as a whole are "nothing more than the assemblage of functional parts." *Leatherman Tool Grp.*, 199 F.3d at 1013. And the Court declines to independently inspect each and every exhibit and scour the pictures for one design that is entirely nonfunctional. Plaintiffs cannot simply say "each and every design is nonfunctional" without doing any further work to show this is plausible for each exhibit. *See Stewart v. Nevada*, No. 09-cv-1063-PMP-GWF, No. 2:09-cv-1063-PMP-GWF, 2011 WL 588485, at *2 (D. Nev. Feb. 9, 2011) ("The Court will not comb through attached exhibits seeking to determine whether a claim possibly could have been stated where the pleading itself does not state a claim.").

Accordingly, the Court again finds that Plaintiffs have not plausibly pled trade dress infringement. The Court has given Plaintiffs various opportunities to amend this claim, and they have been unable to do so in a way that plausibly pleads trade dress infringement. Therefore, the Court dismisses this claim with prejudice. *See Bhagat v. City of Santa Ana*, 58 F. App'x 332, 334 (9th Cir. 2003) (holding that "the failure to supply new facts within an amended complaint supports a denial of further leave to amend"); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

### B. <u>State Law Claims</u>

Plaintiffs again plead two state law claims, intentional interference with prospective economic advantage and unfair competition. The Court previously dismissed without prejudice these claims because as pled, the claims were preempted by the Copyright Act. Plaintiffs have repled their claims and Defendants argue the claims are again preempted.

The Copyright Act of 1976 expressly preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright

as specified by" the Act. 17 U.S.C. § 301(a). Two conditions must be met for the Copyright Act to preempt a state law. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008). "First, the content of the protected right must fall within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106 of the Copyright Act." *Id.* (quoting *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001)). In other words, "[i]f a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005). The extra element in the state law must effectively change "the nature of the action 'so that it is *qualitatively* different from a copyright . . . infringement claim.'" *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993) (quoting *Balboa Ins. Co. v. Trans Glob. Equities*, 218 Cal. App. 3d 1327, 1340 (1990)).

As was the case in the Court's prior order, the issue is whether the rights under the state law claims are "equivalent to" the rights protected under the Copyright Act.[6]

### 1. Intentional Interference with Prospective Economic Advantage

To establish a claim of intentional interference with prospective economic advantage, a plaintiff must show

> (1) an economic relationship between the plaintiff and a third party, with a probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of this relationship; (3) intentional and wrongful conduct on the part of the defendant, designed to interfere with or disrupt the relationship; (4) actual disruption or interference; and (5) economic harm the plaintiff as a proximate result of the

---

[6] No party addresses the first *Sybersound* prong—whether the content of the protected right falls within the subject matter of copyright. The parties only discuss the second prong, and the Court will therefore do the same.

– 13 – 15cv719

defendant's wrongful conduct.

*Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 713 (2007).

Here, the gist of Plaintiffs' claim is that Defendants knew of Plaintiffs' relationship with Fuqing but "went around" Plaintiffs to get cheaper pricing on the products from Fuqing, then sold the products in their stores without Plaintiffs' permission. (TAC ¶¶ 92–93.) Defendants allegedly contacted Fuqing and ordered Plaintiffs' designs and products directly through Fuqing rather than involving or paying Plaintiffs. By doing so, Defendants were able to secure "factory-direct" pricing from Fuqing. (*Id*.) Then Defendants distributed and/or sold Plaintiffs' designs or products. (*Id.* ¶ 96.) Thus, Defendants intentionally interfered with Plaintiffs' business with "customers, manufacturers, and potentially others." (*Id*.) Defendants move to dismiss the claim as preempted.

The Court noted in its prior order, "Plaintiffs' opposition to Defendants' preemption argument is a total of one paragraph." (Prior Order at 12.) Interestingly enough, the same is true again. (*See* Opp'n at 9.) Plaintiffs argue this claim is not preempted because it is based on Defendants "acts of interfering with CPI's exclusive relationship with its manufacturer Fuqing, which Michaels exploited only through learning of the relationship from CPI, and then betraying CPI's confidence for each Defendant's own financial gain by contacting Fuqing directly for manufacturing CPI's product orders, without including CPI in these transactions." (*Id*.) And, as they did in their last opposition, Plaintiffs conclude the paragraph by throwing in the same vague and unhelpful ending: "[t]his is much more involved conduct than just copying a proprietary design, and involves much different elements and factual proof." (*Id.*; *see* Prior Order at 12 (noting same).)

In its prior order, the Court provided an analysis of case law on this issue. In sum, a claim is preempted by the Copyright Act if it relies "solely on defendant's use of copyrighted material—that is, the reproduction, performance, distribution, or display of the work." *Sweet People Apparel, Inc. v. Louis Grp, Inc.*, No. CV 12-

6673 MMM (JEMx), 2013 WL 12131735, at *6 (C.D. Cal. Jan. 31, 2013). "[T]he court should engage in a fact-specific inquiry into the *actual* allegations underlying the claims at issue in the case, so as to determine whether the 'gravamen' of the state law claim asserted is the same as the rights protected by the Copyright Act." *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1190 (C.D. Cal. 2001).

After the prior order, Plaintiffs added only one paragraph to this cause of action, which alleges that Defendants used a false pretense when dealing with Plaintiffs which allowed them to access Plaintiffs' designs and then place orders and receive "knock off" products from Defendants. (TAC ¶ 95.) Even as amended, the focus of this cause of action is on the alleged interference with Plaintiffs' right to manufacture, distribute, and sell their products. (*See id.* ¶ 96.) The alleged injury was caused by Defendants' cutting Plaintiffs out of the chain of distribution for the products. (*Id.*) Similar to the case here, the court in *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d at 1193, analyzed claims for intentional and negligent interference with prospective economic advantage. The court found "the alleged 'wrong' addressed by [the claims], is a 'wrong' which is intended to be exclusively addressed by the federal Copyright Act: namely, the alleged encroachment on one's exclusive right to profit from sale or reproduction of one's original work(s) of authorship." *Id*. Therefore, the claim "does not protect any right 'qualitatively different' from those rights protected by copyright" and is preempted. *Id.*; *see also Aagard v. Palmoar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004) (finding that a claim for intentional interference with prospective economic advantage, premised on defendant's diversion of business from plaintiff by the sale of plaintiff's copyrighted architectural plans, was preempted because "federal copyright laws already protect the exclusive right of distribution").

The Court finds the same result applies here; the alleged harm to Plaintiffs is a disruption to their ability to distribute and sell their works to potential customers. (*See* TAC ¶ 96 ("[T]hrough its acts of manufacturing, distributing and/or selling

Plaintiffs' original and/or substantially similar designs or products without authorization from Plaintiffs, each Defendant has intentionally interfered with Plaintiffs' existing and prospective business . . . ."). The complaint is that Defendants "went around" Plaintiffs and sold their products, allegedly causing Plaintiffs harm. (*Id.* ¶ 93.) Plaintiffs' claim of intentional interference with prospective economic advantage therefore does not protect any right "qualitatively different" from the rights protected by the Copyright Act. The claim is preempted. The Court noted in its last order that it would provide Plaintiffs "one final opportunity" to amend this claim to the extent they could show the claim is not preempted. (Prior Order at 17.) Plaintiffs did not do so, and the Court finds they are unable to plausibly allege this claim in a way that is not preempted. Therefore, the dismissal is with prejudice.

### 2. Unfair Competition

The Ninth Circuit has explicitly found that claims of unfair competition brought under California's Business and Professions Code § 17200 are preempted if they are based on rights granted by the Copyright Act. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998); *see also Wild v. NBC Universal, Inc.*, 788 F. Supp. 2d 1083, 1111 (C.D. Cal. 2011) (finding an unfair competition claim preempted by the Copyright Act where the plaintiff alleged that the defendants had "improperly and unlawfully taken commercial advantage of [plaintiff's] investment in his copyright works").

A plaintiff properly pleads a claim for unfair competition when the plaintiff alleges facts that show any unlawful, unfair, or fraudulent business act or practice. Cal. Bus. & Prof. Code § 17200. A business practice is "unfair" where it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Gemisys Corp. v. Phoenix Am., Inc.*, 186 F.R.D. 551, 564 (N.D. Cal. 1999).

Plaintiffs' unfair competition allegation stems from Defendants' acts "constituting intentional interference with prospective economic advantage." (TAC

¶ 100.) As noted above, the focus of the intentional interference claim is Defendants' sale of the "knock off" products to customers and the resulting interference with Plaintiffs' ability to sell its products. This claim is preempted. Thus, the allegation that this action also forms an unfair competition claim is likewise preempted. *See* 1 Nimmer on Copyright, § 1.15 (2019) (stating that if B is selling B's products and representing to the public that they are B's products, a claim by A that B's products replicate A's is a disguised copyright infringement claim and is preempted). Again, as noted above, the Court gave Plaintiffs one final opportunity to amend this claim, and they are unable to allege the claim in a way that is not preempted. The dismissal of this claim is with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** all causes of action with prejudice. This concludes the litigation in this matter and the Clerk is instructed to enter judgment pursuant to this Order and close the file.

**IT IS SO ORDERED.**

DATED: December 5, 2019

Hon. Cynthia Bashant
United States District Judge